IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CENTRAK INC.,

                    Plaintiff,

          v.                                    Civil Action No. 19-cv-1093-RGA

SONITOR TECHNOLOGIES, INC.,

                    Defendant.

MEMORANDUM OPINION

Neal C. Belgam, Eve H. Ormerod, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington,
DE; Jeffrey I. Kaplan (argued), KAPLAN BREYER SCHWARZ, LLP, Matawan, NJ;

          Attorneys for Plaintiff


Jack B. Blumenfeld, Jennifer Ying (argued), Jennifer A. Ward, MORRIS, NICHOLS, ARSHT &
TUNNELL LLP, Wilmington, DE;

          Attorneys for Defendant


July 13, 2020

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is the issue of claim construction of multiple terms in U.S. Patent Nos. 8,907,764 ("the '764 Patent"), 9,622,030 ("the '030 Patent"), and 10,126,407 ("the '407 Patent"). I have considered the parties' Joint Claim Construction Brief and letters. (D.I. 52, 58, 59, 60). I heard oral argument by videoconference on June 26, 2020. (D.I. 61). At oral argument I ruled on constructions of two of the terms in dispute. I construe the remaining terms here.

## I.    LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324) (alteration in original). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."

1

*Id.* at 1312–13 (citations and internal quotation marks omitted).  "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent."  *Id.* at 1321 (internal quotation marks omitted).  "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).  The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."  *Phillips*, 415 F.3d at 1317–19 (internal quotation marks omitted).  Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works.  *Id.*  Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history.  *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent."  *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).  It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation."  *Osram GMBH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (citation and internal quotation marks omitted).

## II.     CONSTRUCTION OF DISPUTED TERMS

1.     "RF transceiver communication technology"

     a.     *Plaintiff's proposed construction*: "a protocol used in one or both directions to implement bidirectional RF communications"

     b.     *Defendants' proposed construction*: "a protocol for bidirectional RF communication"

     c.     *Court's construction*: "a protocol used in one or both directions to implement bidirectional RF communications"

At the *Markman* hearing, I asked Plaintiff to propose a new construction reflecting the narrowed scope of the dispute. (D.I. 61 at 61:18-62:3). It became clear at the hearing that the parties' disagreement boiled down to whether more than one protocol could be used to implement bidirectional RF communications. (*Id.* at 56:13-57:22). There is nothing in the specification or the claims that limit RF transceiver communications to one protocol. At the hearing Defendant argued that, to have a second protocol, "you may need completely different equipment" and therefore a single transceiver would not use more than one protocol. (*Id.* at 60:1-17). I offered Defendant the opportunity to point out support for this assertion in its expert's declaration, but Defendant has not done so. (*Id.* at 62:19-23; *see* D.I. 59 at 2). I therefore have no reason to construe the term in a way that limits the implementation of bidirectional RF communications to one protocol. Thus, I construe "RF transceiver communication technology" to mean "a protocol used in one or both directions to implement bidirectional RF communications."

2.      "Configured to"

The parties have agreed that "configured to" means "set up to perform the specified function during operation."  (D.I. 58, 59).  Thus, I adopt that construction.

3.      "is synchronized to detect" / "portable device is configured . . . to detect"

      a.      *Plaintiff's proposed construction*: "recovers at a time determined from at least the received timing synchronization information"

      b.      *Defendants' proposed construction*: "recovers at a time determined from the received timing synchronization information"

      c.      *Court's construction*: "recovers at a time determined, at least in part, from the received timing synchronization information"

At the *Markman* hearing, I asked Plaintiff to try to come up with a simpler way of wording its proposed construction while maintaining the same meaning.  (D.I. 61 at 104:11-18).  Plaintiff tried but was unable to rephrase its construction.  (D.I. 58).  Despite the awkward language, I agree with the substance of Plaintiff's proposed construction.  The construction allows for additional information beyond the timing synchronization information to be used in determining the time of recovery.  I do not think that the specification, claims, or any previous statements or decisions in related litigation require that the time be determined solely by timing synchronization information, as Defendant contends.  (*See* D.I. 52 at 67).  I have reworded Plaintiff's proposal and construe the terms to mean "recovers at a time determined, at least in part, from the received timing synchronization information."

III.    **CONCLUSION**

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion, and including the two terms construed at oral argument, suitable for submission to the jury.