IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CENTRAK, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-1093 (RGA) |
| | ) |
| SONITOR TECHNOLOGIES, INC., | ) REDACTED -- PUBLIC VERSION |
| | ) |
| Defendant. | ) |

**LETTER TO THE HONORABLE RICHARD G. ANDREWS FROM JENNIFER YING
REGARDING JUNE 14, 2021 DISCOVERY DISPUTE CONFERENCE**

Nirav N. Desai
Matthew M. Zuziak
STERNE KESSLER GOLDSTEIN & FOX P.L.L.C.
1100 New York Avenue, NW
Washington, DC  20005
(202) 371-2600

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Defendant*

Original Filing Date:  June 3, 2021
Redacted Filing Date:  June 10, 2021

Dear Judge Andrews:

Defendant Sonitor respectfully submits this letter in connection with the discovery conference scheduled for June 14 at 10:00 a.m. D.I. 88. Sonitor seeks an order compelling Plaintiff CenTrak to abide by the previously agreed-to discovery plan regarding the collection of documents from its custodians that was twice-agreed to by CenTrak, in August 2020 and in January 2021.

As the Court is aware, this is the second time CenTrak has sued Sonitor. This time, CenTrak alleges that Sonitor's real-time location system products infringe three of CenTrak's patents,[1] and seeks both lost profits and a reasonable royalty, as well as injunctive relief. D.I. 1 at ¶¶ 28-29. Sonitor has been forced to spend millions of dollars defending itself against CenTrak's lawsuits. Yet, CenTrak now seeks to limit its document production to an arbitrary cut-off date of 2017 on the sole basis that it does not want to spend "tens of thousands of dollars" litigating a case that it brought. If CenTrak does not want to spend money, then it should dismiss this case. But CenTrak cannot seek to put Sonitor out of business, make Sonitor spend millions in defending itself again, and then argue that discovery is too expensive.

To be clear, this is not a dispute about whether search terms are too broad, or if there are too many "hit counts." Instead, it is about whether CenTrak should be compelled to collect documents from the six custodians (and limited search on a seventh custodian) it twice agreed to search for the time period dating back to six years before the filing of the complaint. Importantly, CenTrak does not dispute that these custodians possess relevant and discoverable information relating to Sonitor's defenses and counterclaim, as well as CenTrak's claims for lost profits, reasonable royalty, and injunctive relief. Nor is the number of custodians unduly burdensome or the time period unreasonable. And, there is no other source for the information that Sonitor seeks, as everything is within CenTrak's possession, custody, and control. As such, CenTrak cannot be heard to complain about discovery costs when it was the one who brought this second lawsuit, and Sonitor's motion should be granted.

I.  **Relevant Factual Background.**

In July 2020, at CenTrak's request, the parties exchanged proposals for collecting, searching, and producing ESI (*see* D.I. 67, 68; Ex. 1 & 2). CenTrak originally proposed collecting and searching documents from only the two named inventors and its former CEO. Ex. 1. After negotiations, CenTrak agreed to six custodians–the three it originally proposed, plus two former marketing employees, and one sales employee—and to a limited search on a seventh custodian, Roby Peeters. Ex. 3 at 1-2. After a stay was lifted (*see* D.I. 78), the parties exchanged final ESI proposals on January 15, 2021 (D.I. 80, 81). CenTrak's Jan. 15 proposal was identical to the proposal it agreed to in August 2020. *Compare* Ex. 4 *with* Ex. 3. On January 22, 2021, CenTrak confirmed that it "intend[ed] to begin the esi process . . .". Ex. 5 at 4.

Less than a month before the March 31, 2021 document production deadline (D.I. 79 at 1),

---

[1] In C.A. No. 14-183, CenTrak asserted U.S. Patent No. 8,604,909 (the "'909 Patent"). Here, CenTrak has asserted U.S. Patent Nos. 8,907,764, 9,622,030, and 10,236,407 (the "Asserted Patents"), all of which are allegedly continuations of the '909 Patent.

1

however, CenTrak told Sonitor that its document collection efforts yielded nearly a terabyte of data, and suggested a date cutoff of 2017, a mere two years before this lawsuit was filed. Ex. 5 at 3. Sonitor stated that it could not agree to a 2017 collection date cutoff given when the patents were filed and the timing of when the conduct occurred—namely, the unauthorized disclosure of Sonitor-confidential information to CenTrak employees and subsequent misuse of that information by CenTrak—that formed the basis of Sonitor's defenses and counterclaims, which dated back to 2014. *Id.* at 2-3. On March 9, CenTrak informed Sonitor that it was refusing to comply with its previously agreed-to discovery proposal because it would cost CenTrak "tens of thousands of dollars to merely ingest the data." *Id.* at 1. After a second stay was lifted (*see* D.I. 83, 86), Sonitor provided CenTrak with four additional ESI vendors from which CenTrak could obtain quotes. Ex. 6 at 4-5. Ultimately, CenTrak refused to engage any vendor, stating again that spending "many tens of thousands of dollars" was not justified. *Id.* at 1.

### II.     Sonitor Seeks Relevant, Discoverable Information From Only A Few Custodians

CenTrak cannot complain that the number of custodians is unreasonable. Sonitor already agreed to reduce the number of CenTrak custodians to the six most relevant individuals – four less than what is contemplated by the Default Standard. The six custodians are the two named inventors, the lead decision maker during the relevant time periods, one salesperson, and two former employees who led CenTrak's marketing efforts during the relevant time period. Six custodians (plus Roby Peeters) amounts to less than 4% of CenTrak's workforce.[2] Nor does Sonitor seek discovery beyond the 6-year time limit set out by the Default Standard. *See* D. Del. Default Standard, ¶ 4(e); *LEO Pharma A/S and LEO Pharma Inc. v. Glenmark Pharms. Ltd.*, C.A. No. 20-1359, D.I. 47 (D. Del. May 3, 2021) *objections overruled by* D.I. 60 (D. Del. May 25, 2021) (noting the D. Del. Default Standard, absent good cause, allows discovery up to six years before the filing of the complaint) (Ex. 7 & 8). As courts in this district have noted, the Default Standard already "strikes [ ] a balance by imposing a time limit on most discovery." *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, C.A. No. 17-1065, 2018 WL 2767295, at *3 (D. Del. June 7, 2018).

CenTrak has not shown good cause for why the 6-year time frame under the Default Standard should be shortened, especially here, where the Asserted Patents claim priority to 2008 and where Sonitor has identified events in the 2014-2016 time frame highly relevant to its defenses and counterclaims. These include: (1) license, implied license, and estoppel; (2) unclean hands based on unauthorized disclosure and misuse of Sonitor-confidential information wrongly obtained from a former-Sonitor-now-CenTrak employee (Roby Peeters), from the 2014-2016 production of Sonitor-confidential information, and/or from the February 2016 deposition of Sonitor's chief technical officer, Wilfred Booji, in the first litigation (D.I. 8 at ¶¶ 113–139); and (3) counterclaim of unfair competition, involving statements made by CenTrak's representatives after the filing of the 14-183 Action against Sonitor (*see* D.I. 8 at Counterclaims ¶¶ 13-40, 110-123). The three marketing and sales custodians also possess information highly relevant to damages. *See, e.g.*, *TQ Delta, LLC v. ADTRAN, Inc.*, C.A. No. 14-954, D.I. 380 at 8 (D. Del. May 4, 2018) (ordering plaintiff to produce marketing material relevant to valuation) (Ex. 9); *FatPipe Networks India Ltd. v. XRoads Networks, Inc.*, C.A. No. 09-186, 2010 WL 3064369, at *9 (D. Utah Aug. 3, 2010) (ordering plaintiff to produce marketing material undisputed as relevant).

---

[2] By comparison, Sonitor agreed to search 3 employees, approximately 30% of its workforce.

Tellingly, CenTrak does not contest relevance, only cost. Ex. 5 & 6. CenTrak now argues that the scope of discovery to which the parties previously agreed is unduly burdensome and excessively costly in proportion to the claims in the case. Not so. CenTrak has 200+ employees and is owned by Halma, which has a market cap of just under £10 billion. Ex. 10 at 2. By contrast, Sonitor has just 12 employees. *See* Fed. R. Civ. P. 26(b)(1). The years of discovery preceding 2017 that CenTrak now refuses to collect and search align with the salient facts at issue in Sonitor's unclean hands defense (including prosecution misconduct) and unfair competition counterclaim. These facts are indisputably relevant and critically important. In addition, a 2017 date cutoff would exclude key information regarding CenTrak's damages claims, particularly as to lost profits. Without discovery covering the years of 2014 through 2017, Sonitor's defense and counterclaims would be irreparably harmed, as the most important source of the relevant facts is in CenTrak's own records.

### III.     The Cost to CenTrak is Not Unduly Burdensome or Unreasonable

CenTrak cannot now complain about discovery costs when it chose to bring this second lawsuit. *Cf. Palmer v. Sec. Nat. Bank*, C.A. No. 00-287, 2001 WL 877584, at *1 (E.D. Pa. June 13, 2001) ("Factors to be considered in assessing a request for voluntary dismissal include the expense of a second litigation . . . ."). That CenTrak must incur costs to collect its own documents is not a problem of Sonitor's making. Indeed, allowing a party to avoid discovery by keeping "records [that] frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of discovery rules." *All. to End Repression v. Rochford*, 75 F.R.D. 441, 447 (N.D. Ill. 1977) (internal citation omitted). Nor is the amount and cost, approximately one terabyte and "tens of thousands" of dollars, unreasonable in light of the needs of the case and the issues relevant to discovery, particularly where CenTrak seeks lost profits, a reasonable royalty, and injunctive relief. *See, e.g., Zubulake v. UBS Warburg, LLC,* 217 F.R.D. 309, 321 (S.D.N.Y. 2003) (comparing cost of production to "the amount in controversy"); *U.S. ex rel. Guardiola v. Renown Health,* C.A. No. 12-295, 2015 WL 5056726, at *5-6 (D. Nev. Aug. 25, 2015) (concluding that "$136,000 was not an unreasonable sum" for accessing ESI); *Gaus v. Conair Corp.*, C.A. No. 94-5693, 1999 WL 714086, at *1 (S.D.N.Y. Sept. 14, 1999) (noting that "tens of thousands of dollars" for discovery was not unreasonable given the cost of patent litigation); *XPRT Ventures, LLC v. eBay, Inc.*, C.A. No. 10-595, 2011 WL 13142141, at *14 (D. Del. June 15, 2011*)* (ordering further discovery for earlier time period from 1998 – 2003 even though defendant had already produced hundreds of thousands of pages). Indeed, "[a] response to a discovery request costing $100,000 sounds (and is) costly, but in a case potentially worth millions of dollars, the cost of responding may not be unduly burdensome." *Zubulake*, 217 F.R.D. at 321. Moreover, it is well-settled that the cost of discovery is traditionally meant to be borne by the producing party. *XPRT*, 2011 WL 13142141 at *14 ("[g]enerally, the costs of discovery shall be borne by each party") (citing the Default Standard).

CenTrak's argument that simply *collecting* ESI discovery from all of its agreed-upon custodians is too costly, let alone searching through, reviewing, and producing the discovery, is simply untenable. Discovery is a known part of litigation, and CenTrak should not be permitted to bring a lawsuit and then unilaterally refuse to collect, search through, and produce documents relevant to the issues in the case. Sonitor should be allowed the opportunity to discover the facts that CenTrak previously agreed to produce and that are critically important.

                        Respectfully,

                        */s/ Jennifer Ying*

                        Jennifer Ying (#5550)

JY/
Enclosures
cc:     All Counsel of Record (by CM/ECF and email)

4