# EXHIBIT 1

Redacted in Entirety

# EXHIBIT 2

Redacted in Entirety

# EXHIBIT 3

**Ying, Jennifer**

| | |
|---|---|
| **From:** | Ying, Jennifer |
| **Sent:** | Monday, August 31, 2020 12:00 PM |
| **To:** | 'Jeffrey Kaplan'; Eve Ormerod; Joseph W. Bain; Michael Gilman; Neal Belgam |
| **Cc:** | Ward, Jennifer; Blumenfeld, Jack |
| **Subject:** | RE: Sonitor / CenTrak (19-1093) - CONFIDENTIAL Letter to Jeffrey I. Kaplan from Jennifer Ying re Final Discovery Proposal - Served 8/18/20 |

Jeff,

Thank you for confirming agreement to our proposal as outlined in my August 26 email below.  Below is our list of the 6 custodians for the full set of search terms:

1. Ari Naim
2. Israel Amir
3. Karuppiah Annamalai
4. Wil Lukens
5. Steven Bollinger
6. Adam Peck

Separately, we have initial hit count lists for the 3 Sonitor custodians.  There are several terms that are generating several thousand and tens of thousands of results that need to be narrowed.  Let me know when we can exchange hit count lists and discuss further.

Thank you
Jennifer

---

**From:** Jeffrey Kaplan <jkaplan@kbsiplaw.com>
**Sent:** Friday, August 28, 2020 12:25 PM
**To:** Ying, Jennifer <jying@MNAT.com>; Eve Ormerod <eormerod@skjlaw.com>; Joseph W. Bain <JBain@shutts.com>; Michael Gilman <mgilman@kbsiplaw.com>; Neal Belgam <nbelgam@skjlaw.com>
**Cc:** Ward, Jennifer <jward@MNAT.com>; Blumenfeld, Jack <JBlumenfeld@MNAT.com>
**Subject:** [EXT] RE: Sonitor / CenTrak (19-1093) - CONFIDENTIAL Letter to Jeffrey I. Kaplan from Jennifer Ying re Final Discovery Proposal - Served 8/18/20

Jennifer:

The below is acceptable but please identify which six you want.

Thanks,

*Jeffrey I. Kaplan*

**Kaplan Breyer Schwarz, LLP**
**Metropark South**
**90 Matawan Road – Suite 201**
**Matawan, NJ  07747**
**www.kbsiplaw.com**

**jkaplan@kbsiplaw.com**
**732-578-0103 Ext. 231 (T)**
**732-718-0857 (M)**
**732-578-0104 (F)**

**New York Office (By appointment)**
**600 Third Avenue Second Floor**
**New York, NY  10016**
**646-571-2300**

This e-mail message and any documents accompanying it contain information that belongs to Kaplan Breyer Schwarz, LLP, and may be confidential and/or legally privileged.  The information is intended for the use of the individual(s) or entity(ies) named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this message and/or accompanying documents is strictly prohibited.  If you have received this e-mail message in error, please immediately notify us by telephone at +1-732-578-0103 x231.

---

**From:** Ying, Jennifer <jying@MNAT.com>
**Sent:** Wednesday, August 26, 2020 3:02 PM
**To:** Jeffrey Kaplan <jkaplan@kbsiplaw.com>; Eve Ormerod <eormerod@skjlaw.com>; Joseph W. Bain <JBain@shutts.com>; Michael Gilman <mgilman@kbsiplaw.com>; Neal Belgam <nbelgam@skjlaw.com>
**Cc:** Ward, Jennifer <jward@MNAT.com>; Blumenfeld, Jack <JBlumenfeld@MNAT.com>
**Subject:** RE: Sonitor / CenTrak (19-1093) - CONFIDENTIAL Letter to Jeffrey I. Kaplan from Jennifer Ying re Final Discovery Proposal - Served 8/18/20

Jeff,

We are willing to agree to your limit of six (6) CenTrak custodians, provided that:

1. Separate from the six custodians identified, CenTrak runs the single search term "Sonitor" on Roby Peeters' emails and files (relevant to RFPs 29-34, Rog. 15, and our defenses); and
2. Our agreement to the six custodians is without prejudice to seek additional custodians should discovery reveal that additional custodians likely have non-duplicative, relevant information.

Let us know if this is agreeable to CenTrak.  Please also confirm the non-custodial data sources that CenTrak will be searching.

Thank you
Jennifer

**From:** Jeffrey Kaplan <jkaplan@kbsiplaw.com>
**Sent:** Monday, August 24, 2020 5:37 PM
**To:** Ying, Jennifer <jying@MNAT.com>; Eve Ormerod <eormerod@skjlaw.com>; Joseph W. Bain <JBain@shutts.com>;
Michael Gilman <mgilman@kbsiplaw.com>; Neal Belgam <nbelgam@skjlaw.com>
**Cc:** Ward, Jennifer <jward@MNAT.com>; Blumenfeld, Jack <JBlumenfeld@MNAT.com>
**Subject:** [EXT] RE: Sonitor / CenTrak (19-1093) - CONFIDENTIAL Letter to Jeffrey I. Kaplan from Jennifer Ying re Final
Discovery Proposal - Served 8/18/20

Jennifer:

We would like to keep the number of custodians at a total of 6, as the counterclaims are directed to relatively narrow
issues and identifying even 2 or 3 key people is going to net virtually all the relevant documents.

Jeff K.

---

**From:** Ying, Jennifer <jying@MNAT.com>
**Sent:** Friday, August 21, 2020 1:08 PM
**To:** Jeffrey Kaplan <jkaplan@kbsiplaw.com>; Eve Ormerod <eormerod@skjlaw.com>; Joseph W. Bain
<JBain@shutts.com>; Michael Gilman <mgilman@kbsiplaw.com>; Neal Belgam <nbelgam@skjlaw.com>
**Cc:** Ward, Jennifer <jward@MNAT.com>; Blumenfeld, Jack <JBlumenfeld@MNAT.com>
**Subject:** RE: Sonitor / CenTrak (19-1093) - CONFIDENTIAL Letter to Jeffrey I. Kaplan from Jennifer Ying re Final Discovery
Proposal - Served 8/18/20

Jeff,

Regarding the hit lists, we are in the process of document collection and processing, and should have the hit list counts
sometime mid-next week.  We will let you know if we run into any difficulties that will change that timeline.

Regarding your email of August 18 and CenTrak's hit lists and the custodians to be searched, Sonitor would like to
propose a counterproposal to CenTrak's limitation of six (6) custodians.  Sonitor is willing to accept CenTrak's limitation
of six (6) custodians, but believe that the two named inventors of the Asserted Patents, Israel Amir and Karrupiah
Annamalai, should not count toward that limit.  Please let us know if this is acceptable to Centrak, and if so, Sonitor will
provide the names of the six custodians it would like searched, in addition to the two named inventors.

As for dates for depositions, we will look into the availability of our possible Rule 30(b)(6) witnesses, and ask that you do
that same, as we will also be serving a formal Rule 30(b)(6) notice in due course.

Please let me know if you would like to discuss.

Thanks
Jennifer

---

**From:** Jeffrey Kaplan <jkaplan@kbsiplaw.com>
**Sent:** Thursday, August 20, 2020 11:18 AM
**To:** Ogden, Lisa <logden@MNAT.com>; Eve Ormerod <eormerod@skjlaw.com>; Blumenfeld, Jack
<JBlumenfeld@MNAT.com>; Joseph W. Bain <JBain@shutts.com>; Michael Gilman <mgilman@kbsiplaw.com>; MNAT
Internal <46561-0001.wilm@wcs.mnat.com>; Neal Belgam <nbelgam@skjlaw.com>; Ying, Jennifer <jying@MNAT.com>
**Subject:** [EXT] RE: Sonitor / CenTrak (19-1093) - CONFIDENTIAL Letter to Jeffrey I. Kaplan from Jennifer Ying re Final
Discovery Proposal - Served 8/18/20

Jennifer:

Responding to your letter of August 18, please provide us the hit list has you have agreed to provide, and CenTrak will make its determination as to whether to pursue the remaining items with the court.

We will do the same, but given our proposal required you to identify which six custodians you want searched, let us know which they are and we will do that promptly, subject of course to Sonitor's right to seek the additional custodians it wants.

Please let me know when we can expect the hit list.

On a related matter, Id like to get some dates locked down in late September/early October to depose the Sonitor witnesses.  We will need a 30(b)(6) on damages, and a 30(b)(6) on the technical operation of the Sonitor system.  We will issue you formal 30(b)(6) notices, but wanted to give you the request promptly so we can line up dates.  We will also need the deposition of Mr. Cormier, but if he is one of the 30(b)6 witnesses, my suggestion is we just fold it all into one deposition.

Let me have your prompt response to the above.

Thanks,


*Jeffrey I. Kaplan*

**Kaplan Breyer Schwarz, LLP**
**Metropark South**
**90 Matawan Road – Suite 201**
**Matawan, NJ  07747**
**www.kbsiplaw.com**

**jkaplan@kbsiplaw.com**
**732-578-0103 Ext. 231 (T)**
**732-718-0857 (M)**
**732-578-0104 (F)**

**New York Office (By appointment)**
**600 Third Avenue Second Floor**
**New York, NY  10016**
**646-571-2300**


This e-mail message and any documents accompanying it contain information that belongs to Kaplan Breyer Schwarz, LLP, and may be confidential and/or legally privileged.  The information is intended for the use of the individual(s) or entity(ies) named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this message and/or accompanying documents is strictly prohibited.  If you have received this e-mail message in error, please immediately notify us by telephone at +1-732-578-0103 x231.

**From:** Ogden, Lisa <logden@MNAT.com>
**Sent:** Tuesday, August 18, 2020 5:57 PM
**To:** Eve Ormerod <eormerod@skjlaw.com>; Blumenfeld, Jack <JBlumenfeld@MNAT.com>; Jeffrey Kaplan <jkaplan@kbsiplaw.com>; Joseph W. Bain <JBain@shutts.com>; Kelly Havey <kelly@kbsiplaw.com>; Michael Gilman <mgilman@kbsiplaw.com>; MNAT Internal <46561-0001.wilm@wcs.mnat.com>; Neal Belgam <nbelgam@skjlaw.com>; Ying, Jennifer <jying@MNAT.com>
**Subject:** Sonitor / CenTrak (19-1093) - CONFIDENTIAL Letter to Jeffrey I. Kaplan from Jennifer Ying re Final Discovery Proposal - Served 8/18/20

On behalf of Jennifer Ying, I forward the attached letter to Jeffrey I. Kaplan.  **\*Note: The attachment contains CONFIDENTIAL INFORMATION – FOR OUTSIDE COUNSEL'S EYES ONLY.**

**LISA OGDEN**
Administrative Assistant
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 351-9372 T
**logden@mnat.com | www.mnat.com**

**NOTICE:  This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged.  If you are not the intended recipient of this message please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited.  If you believe that you may have received this message in error, please contact me at (302) 351-9372 or by return e-mail.**

# EXHIBIT 4

Redacted in Entirety

# EXHIBIT 5

**Ying, Jennifer**

| | |
|---|---|
| **From:** | Ying, Jennifer |
| **Sent:** | Tuesday, March 9, 2021 10:47 AM |
| **To:** | 'Jeffrey Kaplan'; Eve Ormerod |
| **Cc:** | Michael Gilman |
| **Subject:** | RE: centrak/Sonitor |

Jeff,

It is our understanding that there have been additional potential settlement discussions between the parties and that they have agreed to stay discovery for a short period.  Please provide us with a draft stipulation for review.

As to the rest of your email, we disagree that CenTrak can now unilaterally attempt to limit its ESI collection and production after the parties spent months negotiating a list of custodians and search terms last summer.  Indeed, the parties' respective proposals that were exchanged nearly 3 months ago on January 15, 2021 reflected those negotiations and CenTrak did not raise any issues in the last 8 months about why the discovery proposal that it had agreed to after the parties' negotiations would not be feasible.  Under Rule 26, the list of custodians that CenTrak agreed to search in its January 15, 2021 proposal is more than reasonable in view of CenTrak's size, and given that it includes only 7 custodians, 2 of which are the named inventors of the patents-in-suit.

Moreover, as we have previously explained, CenTrak cannot unilaterally limit the data collection to 2017 as the patents-in-suit were filed before that date, and Sonitor has counterclaims and affirmative defenses that relate to activities that occurred before 2017.  Indeed, CenTrak cannot be heard to complain about the cost of ESI given that it chose to file this suit against Sonitor.  The fact that CenTrak has chosen to use a data processing vendor that intends to charge "tens of thousands of dollar to merely ingest the data and process it for searching" is not Sonitor's burden.

If CenTrak elects to unilaterally attempt to limit its data collection after the negotiations that have occurred and after it has already agreed to perform that ESI collection and search, we will seek sanctions against CenTrak for failure to comply with its discovery obligations and for having to bring a discovery motion.

Best regards,
Jennifer

---

**From:** Jeffrey Kaplan <jkaplan@kbsiplaw.com>
**Sent:** Tuesday, March 9, 2021 9:43 AM
**To:** Ying, Jennifer <jying@morrisnichols.com>; Eve Ormerod <eormerod@skjlaw.com>
**Cc:** Michael Gilman <mgilman@kbsiplaw.com>
**Subject:** [EXT] RE: centrak/Sonitor

Jennifer:

As we cannot agree to the volume of material at issue, we will have to limit the production in a manner that cuts it down to something more reasonable.   Under the balancing test of Rule 26, it is not reasonable to ask CenTrak to incur what will amount to tens of thousands of dollars to merely ingest the data and process it for searching, before documents are even produced.

If you have a suggestion for limiting it, we are happy to discuss.  Otherwise, we will limit it as best we can to what is more reasonable, and if Sonitor wants to obtain anything further, you will need to approach the Court.   Note however, that if Sonitor insists on this volume of documents, CenTrak will seek to shift the cost.

Separately from the above, I learned over the weekend that executives from our clients are apparently talking about settlement again.   My understanding is that they wanted us to put another short hold on this to see if something can finally get done on the settlement front.   Can you please confirm that with Sonitor, and we will send you a stipulation?

Thanks,


*Jeffrey I. Kaplan*



**Kaplan Breyer Schwarz, LLP**
**Metropark South**
**90 Matawan Road – Suite 201**
**Matawan, NJ  07747**
**www.kbsiplaw.com**

**jkaplan@kbsiplaw.com**
**732-578-0103 Ext. 231 (T)**
**732-718-0857 (M)**
**732-578-0104 (F)**

**New York Office (By appointment)**
**600 Third Avenue Second Floor**
**New York, NY  10016**
**646-571-2300**


This e-mail message and any documents accompanying it contain information that belongs to Kaplan Breyer Schwarz, LLP, and may be confidential and/or legally privileged.  The information is intended for the use of the individual(s) or entity(ies) named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this message and/or accompanying documents is strictly prohibited.  If you have received this e-mail message in error, please immediately notify us by telephone at +1-732-578-0103 x231.

---

**From:** Ying, Jennifer <jying@morrisnichols.com>
**Sent:** Friday, March 5, 2021 2:10 PM
**To:** Jeffrey Kaplan <jkaplan@kbsiplaw.com>; Eve Ormerod <eormerod@skjlaw.com>
**Cc:** Michael Gilman <mgilman@kbsiplaw.com>
**Subject:** RE: centrak/Sonitor

Hi Jeff

Thanks for your email.

We cannot agree to the date limitation of 2017 and forward that you have proposed.  The patents were filed before 2017 and there are allegations in our counterclaims relating to activities that occurred prior to 2017.

In addition, we already agreed to significantly limit the number of custodians we asked CenTrak to search from our original proposal, so I don't think that we can agree to a further reduction in the number of custodians.

In my experience with ESI collection, sometimes companies will have in-house tools that allow you to run the search terms on the custodian's data/emails/files directly, and then exporting the results for the vendor to process.  Do you know if CenTrak has such capabilities?

Jen

---

**From:** Jeffrey Kaplan <jkaplan@kbsiplaw.com>
**Sent:** Wednesday, March 3, 2021 10:00 AM
**To:** Ying, Jennifer <jying@morrisnichols.com>; Eve Ormerod <eormerod@skjlaw.com>
**Cc:** Michael Gilman <mgilman@kbsiplaw.com>
**Subject:** [EXT] RE: centrak/Sonitor

Jennifer:

Our initial collection based upon the custodians yielded nearly a terabyte of data, and we still have one more item to collect that will likely bring it well over a terabyte.

The cost of processing all that data, even to just ingest it and run search terms, is enormous.

One possibility is that we could try to date limit it to, for example, 2017 and forward.  Another possibility is that a few of the custodians we suspect are likely to have emails that are either duplicative, or if not duplicative, address similar items in terms of their potential relevance to this case.  We suspect this because many of them work together and many emails are likely to be copied to more than one of the custodians you have identified.

In any event, given the issues in the case, we believe it makes sense to narrow down what has to be searched.

Let me know which of the above options you wish to pursue.

Thanks,


*Jeffrey I. Kaplan*



**Kaplan Breyer Schwarz, LLP**
**Metropark South**
**90 Matawan Road – Suite 201**
**Matawan, NJ  07747**
**www.kbsiplaw.com**

3

jkaplan@kbsiplaw.com
**732-578-0103 Ext. 231 (T)**
**732-718-0857 (M)**
**732-578-0104 (F)**

**New York Office (By appointment)**
**600 Third Avenue Second Floor**
**New York, NY  10016**
**646-571-2300**

---

**From:** Ying, Jennifer <jying@MNAT.com>
**Sent:** Friday, January 22, 2021 4:05 PM
**To:** Jeffrey Kaplan <jkaplan@kbsiplaw.com>; Eve Ormerod <eormerod@skjlaw.com>
**Cc:** Michael Gilman <mgilman@kbsiplaw.com>
**Subject:** RE: centrak/Sonitor

Hi Jeff

At this time, Sonitor also does not anticipate any COVID-related issues that would prevent us from completing document production.  If anything arises, we will be sure to let you know.

Thanks
Jennifer

---

**From:** Jeffrey Kaplan <jkaplan@kbsiplaw.com>
**Sent:** Friday, January 22, 2021 1:01 PM
**To:** Ying, Jennifer <jying@MNAT.com>; Eve Ormerod <eormerod@skjlaw.com>
**Cc:** Michael Gilman <mgilman@kbsiplaw.com>
**Subject:** [EXT] centrak/Sonitor

Jennifer:

The court's scheduling order indicates today as  a meet and confer concerning document collection procedures due to covid.

I talked with our outside esi vendor this week, and they advise that based upon they way they are now operating, they do not anticipate any covid related issues that would prevent us from completing document production.  Therefore, we intend to begin the esi process for identifying and, as appropriate, collecting, documents, subject to any non-covid issues/objections that have been raised or which may arise.

If Sonitor's situation is any different, please let me know.

Thanks,

*Jeffrey I. Kaplan*



**Kaplan Breyer Schwarz, LLP**
**Metropark South**
**90 Matawan Road – Suite 201**
**Matawan, NJ  07747**
**www.kbsiplaw.com**

**jkaplan@kbsiplaw.com**
**732-578-0103 Ext. 231 (T)**
**732-718-0857 (M)**
**732-578-0104 (F)**

**New York Office (By appointment)**
**600 Third Avenue Second Floor**
**New York, NY  10016**
**646-571-2300**

This e-mail message and any documents accompanying it contain information that belongs to Kaplan Breyer Schwarz, LLP, and may be confidential and/or legally privileged.  The information is intended for the use of the individual(s) or entity(ies) named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this message and/or accompanying documents is strictly prohibited.  If you have received this e-mail message in error, please immediately notify us by telephone at +1-732-578-0103 x231.

---

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

# EXHIBIT 6

**Ying, Jennifer**

| | |
|---|---|
| **From:** | Jeffrey Kaplan <jkaplan@kbsiplaw.com> |
| **Sent:** | Friday, May 14, 2021 11:27 AM |
| **To:** | Ying, Jennifer |
| **Cc:** | Michael Gilman; Eve Ormerod; Neal Belgam |
| **Subject:** | [EXT] RE: Prosed Joint Status Report of 05-06-2021.docx |

Jennifer:

We got a couple of other estimates, but all are many tens of thousands of dollars simply to ingest the data process it for searching, much less produce the documents.  We do not believe this is  justified given the claims in the suit, and the time frames Sonitor alleges that improper conduct took place.    Hence, I think at this point, if you are not willing to narrow what has to be collected in any way, we do need the court.

I will coordinate with Eve or Neal and one of them will then coordinate with you to contact the court and get the issue on the docket.

If I come up with any further thoughts on how to possibly resolve it, Ill come back to you, and would ask you to do so as well.

Thanks,


*Jeffrey I. Kaplan*



**Kaplan Breyer Schwarz, LLP**
**Metropark South**
**90 Matawan Road – Suite 201**
**Matawan, NJ  07747**
**www.kbsiplaw.com**

**jkaplan@kbsiplaw.com**
**732-578-0103 Ext. 231 (T)**
**732-718-0857 (M)**
**732-578-0104 (F)**

**New York Office (By appointment)**
**600 Third Avenue Second Floor**
**New York, NY  10016**
**646-571-2300**


**This e-mail message and any documents accompanying it contain information that belongs to Kaplan Breyer**

Schwarz, LLP, and may be confidential and/or legally privileged. The information is intended for the use of the individual(s) or entity(ies) named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this message and/or accompanying documents is strictly prohibited. If you have received this e-mail message in error, please immediately notify us by telephone at +1-732-578-0103 x231.

---

**From:** Ying, Jennifer <jying@morrisnichols.com>
**Sent:** Friday, May 14, 2021 10:12 AM
**To:** Jeffrey Kaplan <jkaplan@kbsiplaw.com>
**Cc:** Michael Gilman <mgilman@kbsiplaw.com>; Eve Ormerod <eormerod@skjlaw.com>
**Subject:** RE: Prosed Joint Status Report of 05-06-2021.docx

Hi Jeff

Can you let us know where you landed after reviewing the vendor quotes? As we stated before, Sonitor is willing to discuss the reasonableness of hit counts and search terms, but the issue that you have posed relates to the scope of collection from custodians before any search terms are applied. And, for the reasons previously stated, we cannot agree to limit the number of custodians or date ranges more than what we have already agreed to do during the parties' discussions from last summer.

Thanks
Jennifer

---

**From:** Jeffrey Kaplan <jkaplan@kbsiplaw.com>
**Sent:** Wednesday, May 12, 2021 10:25 AM
**To:** Ying, Jennifer <jying@morrisnichols.com>
**Cc:** Michael Gilman <mgilman@kbsiplaw.com>; Eve Ormerod <eormerod@skjlaw.com>
**Subject:** [EXT] RE: Prosed Joint Status Report of 05-06-2021.docx

Yes.

I have to go through them today. While some are less expensive, all are in the many tens of thousands of dollars. If there is no way to reduce what has to be searched, we should approach the court this week.

Im a bit backed up today but should be able to devote some time to this tomorrow and we can reach out to the court tomorrow to get a date for resolving it if that is what is needed.


*Jeffrey I. Kaplan*

**Kaplan Breyer Schwarz, LLP**
**Metropark South**
**90 Matawan Road – Suite 201**
**Matawan, NJ  07747**

**www.kbsiplaw.com**

**jkaplan@kbsiplaw.com**
**732-578-0103 Ext. 231 (T)**
**732-718-0857 (M)**
**732-578-0104 (F)**

**New York Office (By appointment)**
**600 Third Avenue Second Floor**
**New York, NY  10016**
**646-571-2300**

This e-mail message and any documents accompanying it contain information that belongs to Kaplan Breyer Schwarz, LLP, and may be confidential and/or legally privileged.  The information is intended for the use of the individual(s) or entity(ies) named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this message and/or accompanying documents is strictly prohibited.  If you have received this e-mail message in error, please immediately notify us by telephone at +1-732-578-0103 x231.

**From:** Ying, Jennifer <jying@morrisnichols.com>
**Sent:** Wednesday, May 12, 2021 10:19 AM
**To:** Jeffrey Kaplan <jkaplan@kbsiplaw.com>
**Cc:** Michael Gilman <mgilman@kbsiplaw.com>; Eve Ormerod <eormerod@skjlaw.com>
**Subject:** RE: Prosed Joint Status Report of 05-06-2021.docx

Jeff,

Any updates from you regarding the vendor quotes?

Thank you
Jen

**From:** Jeffrey Kaplan <jkaplan@kbsiplaw.com>
**Sent:** Friday, May 7, 2021 4:48 PM
**To:** Ying, Jennifer <jying@morrisnichols.com>
**Cc:** Michael Gilman <mgilman@kbsiplaw.com>; Eve Ormerod <eormerod@skjlaw.com>
**Subject:** [EXT] Re: Prosed Joint Status Report of 05-06-2021.docx

Thanks

Have a good weekend

Jeff k

Sent from my iPhone

On May 7, 2021, at 4:10 PM, Ying, Jennifer <jying@morrisnichols.com> wrote:

Jeff, here are a few more vendors that you can try reaching out to:

███████████████████████████████████████████████████

████████████████████████████████

██████████████████████████

Thanks
Jen

---

**From:** Jeffrey Kaplan <jkaplan@kbsiplaw.com>
**Sent:** Friday, May 7, 2021 3:11 PM
**To:** Ying, Jennifer <jying@morrisnichols.com>; Michael Gilman <mgilman@kbsiplaw.com>; Eve Ormerod <eormerod@skjlaw.com>
**Subject:** [EXT] RE: Prosed Joint Status Report of 05-06-2021.docx

And thanks for the ediscovery contact.

*Jeffrey I. Kaplan*

<image001.jpg>
**Kaplan Breyer Schwarz, LLP**
**Metropark South**
**90 Matawan Road – Suite 201**
**Matawan, NJ  07747**
**www.kbsiplaw.com**

**jkaplan@kbsiplaw.com**
**732-578-0103 Ext. 231 (T)**
**732-718-0857 (M)**
**732-578-0104 (F)**

**New York Office (By appointment)**
**600 Third Avenue Second Floor**
**New York, NY  10016**
**646-571-2300**

**This e-mail message and any documents accompanying it contain information that belongs to Kaplan Breyer Schwarz, LLP, and may be confidential and/or legally privileged.  The information is intended for the use of the individual(s) or entity(ies) named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this message and/or accompanying documents is strictly**

**prohibited.  If you have received this e-mail message in error, please immediately notify us by telephone at +1-732-578-0103 x231.**

---

**From:** Ying, Jennifer <jying@morrisnichols.com>
**Sent:** Friday, May 7, 2021 3:04 PM
**To:** Jeffrey Kaplan <jkaplan@kbsiplaw.com>; Michael Gilman <mgilman@kbsiplaw.com>; Eve Ormerod <eormerod@skjlaw.com>
**Subject:** RE: Prosed Joint Status Report of 05-06-2021.docx

Jeff, attached are some further edits to the draft status report in the exhibit. Mostly to clean up the language that was added at the start and some corrections on the signature block.

Regarding additional e-discovery vendor contacts, ███████████████████████████
████████████████████████████████

I will also have additional names/contacts for you shortly.

---

**From:** Jeffrey Kaplan <jkaplan@kbsiplaw.com>
**Sent:** Friday, May 7, 2021 1:52 PM
**To:** Michael Gilman <mgilman@kbsiplaw.com>; Ying, Jennifer <jying@morrisnichols.com>; Eve Ormerod <eormerod@skjlaw.com>
**Subject:** [EXT] Prosed Joint Status Report of 05-06-2021.docx

Hows this?

*Jeffrey I. Kaplan*


<image001.jpg>
**Kaplan Breyer Schwarz, LLP**
**Metropark South**
**90 Matawan Road – Suite 201**
**Matawan, NJ  07747**
**www.kbsiplaw.com**

**jkaplan@kbsiplaw.com**
**732-578-0103 Ext. 231 (T)**
**732-718-0857 (M)**
**732-578-0104 (F)**

**New York Office (By appointment)**
**600 Third Avenue Second Floor**
**New York, NY  10016**

**646-571-2300**

**This e-mail message and any documents accompanying it contain information that belongs to Kaplan Breyer Schwarz, LLP, and may be confidential and/or legally privileged.  The information is intended for the use of the individual(s) or entity(ies) named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this message and/or accompanying documents is strictly prohibited.  If you have received this e-mail message in error, please immediately notify us by telephone at +1-732-578-0103 x231.**

---

---

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

EXHIBIT 7

ORAL ORDER: Having reviewed the parties' Joint Motion for Discovery Dispute Teleconference (D.I. 37 ), and the associated letter briefing and documents (D.I. 41 , 42 , 44 ), it is HEREBY ORDERED that Defendant's request is DENIED. The parties agreed to a Stipulated Discovery Order that requires a showing of good cause to obtain "follow-up discovery" outside of the term of six years prior to the filing of the complaint unless it relates to "asserted prior art or the conception and reduction to practice of the inventions claimed in any patent-in-suit." (D.I. 30 3(c).) The Court agrees with Plaintiffs that "follow-up discovery" refers to all discovery other than that contemplated under Paragraphs 3(a) and 3(b) (i.e., infringement and invalidity contentions and the accompanying document productions). The original application leading to the patents-in-suit was filed in June 2010. Plaintiffs have agreed to search for and produce responsive documents from within six years of the filing of the complaint as well as all documents that predate June 2010 that relate to the conception and reduction to practice of the patented inventions, "treating the latter category broadly to include research and development of the claimed inventions prior to the filing of the priority application." (D.I. 44 at 2.) As for the remaining documents requested by Defendant, including documents from June 2010 through October 2014, Defendant has not demonstrated good cause for a blanket order requiring their production, particularly since Plaintiffs have also agreed to produce the NDA and IND for its Enstilar product and the file histories, assignments and licenses for the patents-in-suit. Accordingly, Defendant's motion is DENIED. The discovery dispute teleconference scheduled for May 5, 2021 is CANCELLED. ORDERED by Judge Jennifer L. Hall on 5/3/2021. (ceg) (Entered: 05/03/2021)

As of May 4, 2021, PACER did not contain a publicly available document associated with this docket entry. The text of the docket entry is shown above.

*LEO Pharma A/S et al v. Glenmark Pharmaceuticals Limited f/k/a Glenmark Generics Ltd.*
1-20-cv-01359 (DDE), 5/3/2021, docket entry 47

# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LEO PHARMA A/S and<br>LEO PHARMA INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 20-1359-CFC |
| | ) | |
| GLENMARK<br>PHARMACEUTICALS LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

Defendant has filed objections (D.I. 53) to an oral order docketed by the

Magistrate Judge on May 3, 2021 (D.I. 47). In her ruling, the Magistrate Judge

denied Defendant's request for an order to compel Plaintiff to search for, collect,

and produce documents created more than six years before the Complaint was

filed. D.I. 41 at 1. The Magistrate Judge had the authority to make this ruling

under 28 U.S.C. § 636(b)(a)(A). I may reconsider her order only if "it has been

shown that the magistrate judge's order is clearly erroneous or contrary to law."

*Id.*

The Stipulated Discovery Order signed by the Court at the request of both

parties requires a showing of good cause to obtain "follow-up discovery" that

predates the filing of the Complaint by more than six years unless that discovery is

"related to asserted prior art or the conception and reduction to practice of the inventions claimed in any patent-in-suit." D.I. 30 3(c).  The Magistrate Judge "agreed with Plaintiffs that 'follow-up discovery' refers to all discovery other than that contemplated under Paragraphs 3(a) and 3(b) [of the Stipulated Discovery Order] (i.e., infringement and invalidity contentions and the accompanying document productions)." D.I. 47.  This interpretation of "follow-up discovery" is spot-on.

The Magistrate Judge noted that "Plaintiffs have agreed to search for and produce responsive documents from within six years of the filing of the complaint as well as all documents that predate June 2010 that relate to the conception and reduction to practice of the patented inventions, 'treating the latter category broadly to include research and development of the claimed inventions prior to the filing of the priority application.'" *Id.* (citing D.I. 44 at 2.)  And the Magistrate Judge held that Defendant had not demonstrated good cause for a blanket order requiring Plaintiff to produce all other documents that predate the Complaint by more than six years.  I agree with the Magistrate Judge that Defendant has failed to demonstrate good cause for the extreme, blanket order it sought.

In short, the Magistrate Judge's ruling cannot reasonably be characterized as clearly erroneous or contrary to law.  Defendant's objections are devoid of merit and a response from Plaintiff is unnecessary.

Now therefore, at Wilmington on this 25th day of May in 2021, it is

HEREBY ORDERED that Defendant's objections (D.I. 53) are OVERRULED.

United States District Judge

EXHIBIT 9



May 4, 2018

**VIA ELECTRONIC DELIVERY**

Kenneth L. Dorsney, Esq.
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801

Michael J. Farnan, Esq.
Farnan LLP
919 North Market Street, 12th Floor
Wilmington, Delaware 19801

David W. Holt, Esq.
Jake M. Gipson, Esq.
Bradley Arant Boult Cummings,
LLP
200 Clinton Avenue W, Suite 900
Huntsville, Alabama 35801

Peter J. McAndrews, Esq.
Thomas J. Wimbiscus, Esq.
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, 34th
Floor
Chicago, Illinois 60661

David A. White
Partner
T. 302-984-6370
F. 302-691-1136
dwhite@mccarter.com

McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801-3717
T. 302.984.6300
F. 302.984.6399
www.mccarter.com

**Re: *TQ Delta, LLC v. ADTRAN, Inc.***
     **C.A. Nos. 14-954-RGA, 15-121-RGA**

Dear Counsel:

This letter shall serve as my amended decision and order concerning Defendant's request for the production of certain unredacted documents, as set forth, in greater detail, in Defendant's Motion to Compel Production of Documents (the "Motion").

**BACKGROUND**

On July 17, 2014, Plaintiff TQ Delta, LLC ("TQ Delta") filed suit against Defendant ADTRAN, Inc. ("ADTRAN") in the United States District Court for the District of Delaware [D.I. #1] (the "Complaint"). TQ Delta seeks an award of declaratory relief and monetary damages arising out of ADTRAN's alleged infringement of a number of patents relating to digital subscriber line technology (collectively, the "Patents").

On July 21, 2017, ADTRAN served its Second Request for Production of Documents [D.I. #168 in Case No. 14-954-RGA, and D.I. #170 in

BOSTON

HARTFORD

STAMFORD

NEW YORK

NEWARK

EAST BRUNSWICK

PHILADELPHIA

WILMINGTON

WASHINGTON, DC

May 4, 2018
Page 2

Case No. 15-121-RGA] (the "Requests"). TQ Delta objected to the Requests on numerous grounds, including confidentiality. The parties conferred regarding TQ Delta's objections to the Requests, but they were unable to bridge the difference in their respective positions. In addition to the objections, TQ Delta produced certain documents in response to the Requests with redactions.

The parties' subsequent efforts to meet-and-confer did not resolve their discovery dispute, and ADTRAN contacted the Special Master to request a teleconference. Following a teleconference with the Special Master, on January, 22, 2018, ADTRAN submitted its letter brief in support of the Motion to Compel. TQ Delta served its letter brief in opposition to the Motion to Compel on February 2, 2018. Ten days later, on February 12, 2018, ADTRAN submitted a reply in support of the Motion to Compel.

On February 20, 2018, the Special Master held oral argument on the Motion ("Oral Argument"). On March 30, 2018, the Special Master issued his opinion and order concerning the Motion (the "Order") [D.I. #361 in Case No. 14-954-RGA, and D.I. #362 in Case No. 15-121-RGA]. The Order requested supplemental briefing concerning ADTRAN's request for a redaction log and the production of certain documents in unredacted form. TQ Delta submitted a written statement in support of its position on April 4, 2018 (the "Statement") and ADTRAN served its opposition eight days later (the "Opposition').

## ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 34 permits a party to request the production of documents from its adversary. *See* FED. R. CIV. P. 34(a). Subsection (b)(2) explains the obligations of the responding party, in pertinent part, as follows:

May 4, 2018
Page 3

> (C)   Objections.   An objection must state whether any responsive materials are being withheld on the basis of that objection.   An objection to part of a request must specify the part and permit inspection of the rest.
>
> ...
>
> (E)   Producing the Documents or Electronically Stored Information.   Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> (i)   A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii)   If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> (iii)   A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(C, E).

Federal Rule 26 provides a mechanism for limiting a responding party's obligations to comply with the rules of discovery.  *See generally* FED. R. CIV. P. 26, 37.   "Rule 26 ... allows for two approaches to seeking the protection of sensitive—but relevant—information."  *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).   A party may argue that certain information is protected from disclosure as a result of an evidentiary privilege, or in the alternative, seek the entry of a protective order.  *See id.*

Federal Rule 26(c) specifically provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance,

May 4, 2018
Page 4

embarrassment, oppression, or undue burden or expense, including one or more of the following: ... (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; ... (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way ..." FED. R. CIV. P. 26(c). "[W]hen a party claims protection from discovery by asserting the existence of an evidentiary privilege, the party seeking such protection bears the burden of establishing the privilege." *Del. Display Grp. LLC v. Lenovo Grp. Ltd.,* C.A. No. 13-2108-RGA, 2016 WL 720977, at *2 (D. Del. Feb. 26, 2016). A party seeking to withhold documents from discovery on the basis of confidentiality must show that "disclosure will work a clearly defined and serious injury to the party seeking closure." *EEOC v. Kronos, Inc., et al.*, 620 F.3d 287, 302 (3d Cir. 2010). Broad allegations of harm will not suffice. *Id.* "The injury[, rather,] must be shown with specificity." *Id.* The United States Third Circuit Court of Appeals has recognized a list of criteria for determining whether the party asserting confidentiality has satisfied its burden, such as whether the disclosure will violate privacy concerns; whether the information is sought for legitimate reasons; whether the disclosure will cause embarrassment; whether the disclosure of information will promote fairness; and whether the case involves issues of public importance. *See id.*

The present dispute concerns TQ Delta's production of seven (7) redacted documents in response to the Requests (collectively, the "Relevant Documents"). *See* Statement at p. 1. The Relevant Documents include TQ Delta's Amended and Restated Limited Liability Company Agreement (the "LLC Agreement"), a marketing material provided to potential investors (the "Marketing Material"), and TQ Delta's financial statements (collectively, the "Financial Statements"). *See generally* Statement. TQ Delta redacted specific portions of the Relevant Documents to protect against the disclosure of investors' identities, anticipated expenditures, and its finances. *See id.*

May 4, 2018
Page 5

### 1. TQ Delta

TQ Delta argues in favor of producing the Relevant Documents in their current, redacted form.  It cites to a transcript from a motion to compel hearing before Judge Andrews in *TQ Delta LLC v. Comcast Cable Comm'cns LLC, et al.*, C.A. Nos. 15-611, 15-612, 15-613, 15-614, 15-615 (D. Del. Oct. 11, 2016) ("*Comcast Cable*"), in which Judge Andrews denied the movant's request to compel the respondent to search for and produce documents related to "plaintiff's funding entities" or its "bank account balance." *Id.* at 34:5, 38:16.

### 2. ADTRAN

ADTRAN seeks the production of the Relevant Documents in unredacted form.  It argues that TQ Delta's redactions are "categorically improper" and disputes TQ Delta's assertion of confidentiality.  Response at p. 1.  ADTRAN relies, in large part, on Judge Andrews' opinion in *Del. Display Grp.* to support its position.  *See id.* at pp. 1-2.

### B. The Court Grants The Motion In Part.

A motion to compel lies within the discretion of the Court.  *See generally Takeda Pharma. Co. Ltd. v. Teva Pharma. USA, Inc.*, C.A. No. 09-841-SLR-LPS, 2010 WL 2640492, at *2 (D. Del. June 21, 2010).  A request for the entry of a protective order or the modification of an existing order is also subject to an exercise of judicial discretion.  *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994).  Federal Rule 26 confers significant authority upon the Court to regulate discovery and tailor its relief to the needs of each case.  *See* FED. R. CIV. P. 26(c).

The Special Master finds Judge Andrews' opinion in *Del. Display Grp.* informative.  *Del. Display Grp.* reflects a plain language interpretation of the requirements of Federal Rule 34.  When confronted with similar circumstances concerning the producing party's redaction of responsive documents in *Del. Display Grp.*, Judge Andrews opined that the producing party's assertion of relevance and sensitive information "does

May 4, 2018
Page 6

not entitle [the producing party] to redact information, which they deem irrelevant, from otherwise relevant documents." *Id.* at *6 ("[A] party may not redact information that it unilaterally deems sensitive, embarrassing, or irrelevant."). The court further explained that the redactions were unnecessary and disruptive based on the court's prior entry of a protective order, which shielded the producing party from harm. *See id.* at *6 fn 11. While Judge Andrews indicated that the court may have reached another result under different circumstances, the *Del. Display Grp.* court found comfort in the fact that the previously-redacted information was protected from further disclosure by the confidentiality order. *See id.*

Judge Andrews cited to *Orion Power Midwest* in support of his finding in *Del. Display Grp. See Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, 2008 WL 4462301, at *2 (W.D. Pa. Sept. 30, 2008). In *Orion Power Midwest*, the district court affirmed a decision of the special master to compel the production of certain documents in unredacted form. *See id.* at *2. The *Orion Power Midwest* court based its decision on the plain language of Federal Rule 34, which "talks about the production of 'documents,' as opposed to the relevant information contained in those documents. It is at least implicit that the duty to 'produce documents as they are kept in the usual course of business' includes the substantive content of those documents." *Id.*

TQ Delta's reliance on Judge Andrews' findings in *Comcast Cable* is not entirely unwarranted. The Special Master, however, finds the present case distinguishable from *Comcast Cable* where *Comcast Cable* presented the question of whether a responding party was obligated to search for and produce documents responsive to requests that the court ultimately found irrelevant and not discoverable. In this instance, TQ Delta found the Relevant Documents responsive to certain Requests and produced the Relevant Documents, albeit in redacted form. The Special Master is reluctant to find that the presence of irrelevant information alone in a responsive, non-privileged document permits a responding party to redact the irrelevant information or withhold production altogether. The Special Master is equally reluctant to invite responding

May 4, 2018
Page 7

parties to unilaterally determine those portions of responsive, non-privileged documents that the requesting party may view. Further, the potential for abuse is not lost on the Special Master, in which parties could unnecessarily expand the realm of discovery disputes beyond the typical issues of relevance, proportionality, and privilege, and thus, overwhelm the courts with a document-by-document review of a party's redactions. In the event that responsive discovery includes confidential or sensitive information, the responding party should avail itself of the benefits of Federal Rule 26(c).

### 1. The LLC Agreement

The Special Master compels TQ Delta to produce the LLC Agreement in its unredacted form. The LLC Agreement is responsive to Request Nos. 8-10. *See* Statement at p. 2. The redacted portions of the LLC Agreement include information concerning the identity of TQ Delta's members, their investment in TQ Delta, and their right to receive distributions. TQ Delta relies on *Comcast* to support the redactions. Again, *Comcast Cable* is factually distinguishable from the present case. Further, Judge Andrews indicated in *Comcast Cable* that funding information is arguably relevant to valuation. The *Comcast Cable* court also stated that a patent holder's valuation of its patent is relevant. Conversely, an entity's interest in becoming a member (or investor) of a patent holder and the financial stake they put on such interest (or financial motivation for acquiring such interest) may be relevant.

TQ Delta has not satisfied its burden under Federal Rule 26(c). TQ Delta has not demonstrated a specific or material injury in the event that the LLC Agreement is produced to ADTRAN in unredacted form. At best, their argument amounts to a broad allegation of harm that the Third Circuit previously rejected in *EEOC*. *See* 620 F.3d at 302. Further, the LLC Agreement is subject to the confidentiality order entered in this case, in which TQ Delta has marked the document as 'Highly Confidential – Attorneys' Eyes Only.' This designation addresses Judge Andrews' concern in *Del. Display Grp.* and TQ Delta's general fears. Accordingly, the Special Master compels TQ Delta to produce the LLC

May 4, 2018
Page 8

Agreement in unredacted form.  Finally, to the extent that ADTRAN seeks to exploit this information through costly and/or unnecessary discovery, the Court is fully capable of resolving any party's concerns.

### 2.   The Marketing Material

The Special Master compels TQ Delta to produce the Marketing Material in unredacted form.  The Marketing Material purports to discuss information relevant to a potential investor, which is intended to promote or induce investment in TQ Delta.  The Marketing Material is relevant to the issue of valuation.  In this instance, the redacted portions of the Marketing Material consist of financial estimates.  In the Statement, TQ Delta fails to identify a specific harm to be suffered in the event of full disclosure.  *See* Statement at p. 3.  Rather, like the LLC Agreement, TQ Delta simply does now want ADTRAN to have this information.  The Special Master does not decide, and TQ Delta did not argue in the context of the Marketing Material, that the redacted information was irrelevant to this Action.  The redacted information, however, makes up a small fraction of the total amount of information conveyed in the Marketing Material, and this document would appear to highlight the Special Master's concern that parties would engage in a tedious, piecemeal discovery process, by which each and every responsive document contains redactions to guard against the disclosure of information that the responding party simply does not wish to make. Further, the designation of the Marketing Material as 'Highly Confidential – Outside Attorneys' Eyes Only' would appear to alleviate TQ Delta's confidentiality concerns.

### 3.   The Financial Statements

The Special Master denies ADTRAN's request for the production of unredacted copies of the Financial Statements.  The Special Master does not find ADTRAN's position concerning this series of documents persuasive, and the Order previously rejected ADTRAN's proportionality-specific argument.  *See* Opposition at pp. 2-3.  Further, unlike the LLC Agreement and the Marketing Material, the responsive

May 4, 2018
Page 9

portion of the Financial Statements is a fraction of the total information conveyed.  The majority of the information included in the Financial Statements, which TQ Delta has redacted, could convey an unfair litigation advantage that the existing confidentially order may be ill-equipped to address.[1]  *See EEOC*, 620 F.3d at 302. Once the proverbial cat is out of the bag, there is no putting it back in.  Accordingly, TQ Delta is not required to produced unredacted copies of the Financial Statements.[2]

TQ Delta shall produce the responsive documents without redactions in compliance with this Order the later of May 4, 2018 or within two business days of Judge Andrews' decision upon his review of any timely objections that TQ Delta may file.

It is so ordered.

/s/ *David A. White*
Special Master David A. White

---

[1] The Special Master does not find that ADTRAN has advanced a legitimate purpose for the production of the Financial Statements in unredacted form.  *See EEOC*, 620 F.3d at 302.  Further, this case does not promote an interest of public importance. *See id.*

[2] Alternatively, the Special Master finds that TQ Delta has satisfied its burden under Federal Rule 26(c), which permits the Special Master to "(D) forbid[] inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; ... (G) require[e] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way ..." FED. R. CIV. P. 26(c).

# EXHIBIT 10


Watch

▾ US | Dow **0.13%** | S&P 500 **-0.05%** | Nasdaq **-0.09%** | GlobalDow **0.77%** | Gold **-0.34%** | Oil **0.25%**

Home > Investing > Stocks > HLMA > **Overview**

HLMA   U.K.: London

# Halma PLC

+ WATCH

🔒 **CLOSED**

# 2,634.00p

▲ **30.00  1.15%**

Last Updated: Jun 1, 2021 4:35 p.m. BST
Delayed quote

PREVIOUS CLOSE

**2,604.00p**

| 1D ▾ | $ | % | VOL |

2,650p

2,625p

2,600p

8am   9am   10am   11am   12pm   1pm   2pm   3pm   4pm

**VOLUME: 509.58K**                     ⌐ 65 DAY AVG: 684.37K
74% VS AVG

2,608.00              DAY RANGE              2,658.00

2,125.81              52 WEEK RANGE              2,658.00

┃ **Become a MarketWatch subscriber today.** Get Unlimited Access for
┃ 50% off 1 Year                                    **SUBSCRIBE NOW**

OVERVIEW   PROFILE   CHARTS   FINANCIALS   HISTORICAL QUOTES


**Watch**

2,811.00p        2,808.00 - 2,858.00

| 52 WEEK RANGE | MARKET CAP |
|---|---|
| **2,125.81 - 2,658.00** | **£9.88B** |

| SHARES OUTSTANDING | PUBLIC FLOAT |
|---|---|
| **N/A** | **376.32M** |

| BETA | REV. PER EMPLOYEE |
|---|---|
| **0.79** | **£177.18K** |

| P/E RATIO | EPS |
|---|---|
| **56.51** | **£0.47** |

| YIELD | DIVIDEND |
|---|---|
| **0.64%** | **6.87p** |

| EX-DIVIDEND DATE | SHORT INTEREST |
|---|---|
| **Dec 24, 2020** | **N/A** |

| % OF FLOAT SHORTED | AVERAGE VOLUME |
|---|---|
| **N/A** | **684.37K** |

## PERFORMANCE

| | |
|---|---|
| **5 Day** | 2.53% |
| **1 Month** | 1.78% |
| **3 Month** | 14.17% |
| **YTD** | 7.55% |
| **1 Year** | 14.92% |

## ANALYST RATINGS

AVG

| SELL | UNDER | HOLD | OVER | BUY |
|---|---|---|---|---|

NUMBER OF RATINGS   16                      FULL RATINGS →

## RECENT NEWS

| MARKETWATCH | DOW JONES |
|---|---|

MW

### Halma ups forecast to line up with prior year
Mar. 24, 2021 at 3:22 a.m. ET by Joe Hoppe



*Watch*

| US | Dow **0.13%** | S&P 500 **-0.05%** | Nasdaq **-0.09%** | GlobalDow **0.77%** | Gold **-0.34%** | Oil **0.25%** |

### Halma profit, sales rise, declares final divided
Jul. 14, 2020 at 2:51 a.m. ET by Joe Hoppe

### Halma executives take 20% pay cut over COVID-19
Apr. 21, 2020 at 2:46 a.m. ET by Anthony O. Goriainoff

Sponsored
### Where should you invest $1,000 right now?
The Motley Fool

Dianomi

### European stocks trade lower in first opportunity to react to start of Trump impeachment process
Sep. 25, 2019 at 5:27 a.m. ET by Steve Goldstein

Advertisement

OTHER NEWS | PRESS RELEASES

No Headlines Available

#### HALMA PLC

Halma Plc is a holding company which engages in the development, production and sale of hazard and life protection products. It operates through the following segments: Process Safety, Infrastructure Safety, Medical, and Environmental and Analysis. The Process Safety segment offers products to

EXPAND

#### PARTNER CONTENT

*Watch*

| US | Dow 0.13% | S&P 500 -0.05% | Nasdaq -0.09% | GlobalDow 0.77% | Gold -0.34% | Oil 0.25% |

   

### Buy and hold this 'stock' by May 26th to receive 12

### Trade Options on a Shoestring budget. You

### Want to invest abroad? International

### Motley Fool Issues Rare "All In" Buy Alert

PARTNER CONTENT

**Save more with 0.50% APY. Select Markets Only. Member FDIC.**
Citi® High-Yield Savings

**This Password Management Solution is as Easy to Use as it is Secure**
Dashlane

**Where should you invest $1,000 right now? Try Everlasting Stocks today**
The Motley Fool

**"End of the Dow" Prediction Shocks Wall Street**
Banyan Hill

Dianomi

BACK TO TOP ▲



Copyright © 2021 MarketWatch, Inc. All rights reserved.

By using this site you agree to the Subscriber Agreement & Terms of Use, Privacy Notice, and Cookie Notice.

  

 



US    |    **Dow** 0.13%    **S&P 500** -0.05%    **Nasdaq** -0.09%    **GlobalDow** 0.77%    **Gold** -0.34%    **Oil** 0.25%